UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

ROBERT WAYNE ANNABEL, II,

               Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

               Defendants.

_____/

Case No. 1:16-cv-543

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the

Court is required to dismiss any prisoner action brought under federal law if the complaint is

frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary

relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C.

§ 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*,

404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly

irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, and relying on the Court's inherent authority under Fed.

R. Civ. P. 21 to sua sponte dismiss parties and claims for misjoinder, the Court reviewed Plaintiff's

42-page complaint and issued a lengthy opinion on October 14, 2016. In that opinion, the Court

concluded that Plaintiff had filed an omnibus complaint that attempted to link every action with

which he disagreed over a one-year period with a conclusory allegation of conspiracy. The Court

rejected the conspiracy claim. The Court next determined that Plaintiff's first claim – that the

Michigan Department of Corrections or MDOC had violated his rights to adequate medical care under the Eighth Amendment, the Americans with Disabilities Act (ADA), and the Rehabilitation Act (RA) – was unrelated to any of Plaintiff's claims and Defendants and that those other claims and Defendants were misjoined. The Court held that Plaintiff's conspiracy claim and his claims against the MDOC were meritless or that the MDOC was immune. The Court therefore dismissed the MDOC with prejudice. In addition, although technically not properly joined, the Court also dismissed numerous claims that had previously been decided against Plaintiff in another action, holding that those claims were barred by the doctrine of res judicata and therefore were frivolous. Finally, the Court, exercising its authority under Fed. R. Civ. P. 21, concluded that the remaining misjoined claims and Defendants should be dismissed without prejudice.

Plaintiff appealed the Court's decision to the Sixth Circuit. In an unpublished order issued on October 2, 2017, the Sixth Circuit upheld all of the Court's merits-based determinations: dismissal of the conspiracy claim; dismissal of the MDOC as a Defendant; dismissal of the ADA and RA claims; and the dismissal of numerous claims on grounds of res judicata. The court of appeals concluded, however, that the misjoined claims were not subject to dismissal under 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).[1] The court also concluded that Fed. R. Civ. P. 21 did not permit dismissal of a complaint for misjoinder. Concluding that, because the properly joined claims were addressed first, the dismissal of the misjoined claims and Defendants amounted to an improper dismissal of the complaint under Rule 21.

---

[1] Although the Sixth Circuit order issued on October 2, 2017, (ECF No. 19), mandate did not issue until May 22, 2018, (ECF No. 21).

2

The Sixth Circuit has remanded the case to this Court to take action consistent with its appellate decision. This Court must now consider whether any further claims raised by Plaintiff may be dismissed on the merits in order to determine which of the previously misjoined claims should go forward. In order to properly ground the Court's consideration in the lengthy facts of the case, the Court will substantially reiterate the factual allegations set forth in the Court's October 14, 2016, opinion.

## I.     Factual allegations

Plaintiff Robert Wayne Annabel, II presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF). He sues the MDOC, its former Director Daniel Heyns, and its former food service provider Aramark Corporation, Inc. He also sues the following ICF officials: Warden Willie Smith; Deputy Wardens Nannette Norwood, Erica Huss, and John Christiansen; Captain Kevin Woods; Lieutenants Christopher King, (unknown) Zwiker, and S. Rykse; Resident Unit Manager (RUM) E. Smith; Sergeant Dennis Grandy; Correctional Officers J. VanNortrick, (unknown) Scott, (unknown) Berrington, (unknown) Bennett, (unknown) Burns, (unknown) Eyer, D. Christiansen, and Joseph Novak; Social Workers James Apol and Robert Davis; Psychiatrist Dr. W. Yee; Nurse Practitioner (unknown) Sleight; Nurse Kronk; Food Service Manager J. Daugherty; and Chaplain C. Cheney.

In his lengthy complaint, Plaintiff lists the many hardships he allegedly has suffered while housed with the MDOC since 2008. Plaintiff has filed numerous prior lawsuits, in which he complained about being inadequately medicated for his bipolar disorder; being retaliated against for his many grievances and lawsuits; being defamed; being denied his Kosher diet; having his food poisoned; being subjected to the use of excessive force; having his property and mail stolen;

being denied due process; and having prison officials interfere with his access to the courts. He has alleged that all prior defendants have been engaged in a conspiracy to deny him his rights. The first ten pages of the instant complaint describe incidents that occurred prior to the stated period of the complaint (March 24, 2014, through April 24, 2015) and recite the lawsuits previously filed by Plaintiff. The remainder of the complaint consists of allegations about a litany of disparate events between March 24, 2014 and April 24, 2015, ostensibly linked by a conclusory claim that all events were part of a single, global conspiracy headed by Defendant Heyns, the then-Director of the MDOC; claims involving retaliation against Plaintiff; denial of Plaintiff's access to the courts; interference with Plaintiff's mail; violations of Plaintiff's rights under the Eighth Amendment; violations of the Equal Protection Clause, the ADA and the RA; interference with Plaintiff's legal mail; violations of RICO; and deprivations of Plaintiff's property without due process. A substantial number of Plaintiff's allegations and the Defendants he names overlap with allegations he previously raised in *Annabel v. Mich. Dep't of Corr. et al.*, No. 1:14-cv-756 (W.D. Mich.). Many of those claims previously were dismissed with prejudice, though a few were subsequently dismissed without prejudice after Plaintiff failed to comply with the Court's orders.[1]

---

[1] In an opinion and order for partial dismissal and partial service issued on August 21, 2014, the Court dismissed numerous claims and defendants on the ground that the allegations failed to state a claim: the conspiracy claims; the claims related to the dismissal of the Warden's Forum representative; the claims against Heyns, Campbell, Nichols, and Zwiker for interfering with his mail on March 24, April 10, June 17, and July 2, 2014; Plaintiff's retaliation claims based on being placed on modified access, being kept in a stun cuff during transport, being denied hygiene supplies and bedding for a brief period, being harassed by prisoner Halton, being transferred to ICF, and being subjected to Zwiker's verbal harassment; his free exercise claim against Zwiker; his Eighth Amendment claims against all defendants except Apol, Yee, and Gerlach; his equal protection claims; and his claims under the ADA and the RA. The Court therefore ordered dismissal of all Defendants in that action, except Defendants Apol, Yee and Gerlach. In accordance with Admin. Ord. 03-029, the Court ordered Plaintiff to provide three copies of the complaint for service of the complaint on the three remaining defendants. Plaintiff neither complied with the order nor sought an extension of time in which to do so. Nor did he submit an affidavit to this Court explaining why he could not comply with the Court's order, as the Court expressly instructed in the order. In an order and judgment issued on September 29, 2014,

The following is a summary of Plaintiff's allegations that fall within the time-frame Plaintiff purports to cover in his complaint. On March 24, 2014, a magistrate judge from Eastern District of Michigan issued a report and recommendation (R&R) to grant one defendant's motion for summary judgment and to deny Plaintiff's motion for a temporary restraining order. *See Annabel v. Heyns et al.*, No. 2:12-cv-13590 (E.D. Mich.) (R&R Mar. 24, 2014) (ECF No. 85). Plaintiff alleged in *Annabel v. Mich. Dep't of Corr. et al.*, No. 1:14-cv-756 (W.D. Mich.), that interference with his mail prevented him from receiving the R&R. Also on that date, three other events allegedly occurred: (1) MI-CURE sent Plaintiff a letter declining to investigate corruption in the grievance process; (2) two of Plaintiff's grievances were rejected; and (3) Plaintiff was placed on modified grievance access. Plaintiff contends that all of these actions were retaliatory and designed to prevent him from making additional filings.

On April 30, 2014, three additional events occurred, which Plaintiff alleges were related, in some unexplained fashion, to one another and to Plaintiff's allegations. First, in the absence of objections from him, the district judge adopted the R&R in *Annabel v. Heyns et al.*, No. 2:12-cv-13590 (E.D. Mich. Apr. 20, 2014) (ECF No. 89). Second, prisoner Abkedya Boyd apparently committed suicide at the Gus Harrison Correctional Facility (ARF). Third, the defendants in *Annabel v. Frost et al.*, No. 2:14-v-10244 (E.D. Mich.) (none of whom are Defendants in this action) allegedly transferred the only prisoner representative in Unit 4 to Unit 5. Plaintiff alleges that Prisoner Boyd was housed near Plaintiff and that Plaintiff had assisted prisoner Boyd to file a Step-II grievance and to prepare for litigation of an incident at Macomb

the Court dismissed the case for lack of prosecution, based on Plaintiff's failure to comply with the Court's order. (1:14-cv-756, ECF No. 17, PageID.155-195.)

Correctional Facility. Plaintiff previously raised these allegations in *Annabel v. Mich. Dep't of Corr. et al.*, No. 1:14-cv-756 (W.D. Mich.), and the Court concluded the allegations failed to state a claim. *Id.* (Op. & Ord. Aug. 21, 2014).

On May 1, 2014, Officer Pigg (who is not a defendant in the instant action) mocked Plaintiff for assisting other prisoners in preparing affidavits for a potential suit by Boyd's estate. Plaintiff contends that Boyd's suicide was induced by staff harassment. Plaintiff complains that the same pattern had occurred with another suicide in 2013, which involved another prisoner who was engaged in protected activity with Plaintiff.

On May 13, 2014, Plaintiff told his therapist, James Dickson (not a Defendant) that he wanted to be discharged from his mental health program at ARF, ostensibly to avoid further retaliation by ARF employees. According to Plaintiff, in response to his request, "[D]efendants transferred him to the MDOC's most notoriously brutal Maximum Security, at Ionia Correctional Facility, where Plaintiff had previously suffered substantial staff abuse." (Compl., ECF No.1, PageID.13.) Plaintiff alleges that, although he had been scored since 2008 to a Level-V security classification, he had spent nearly six consecutive years waived down to a Level-IV residential treatment program (RTP) or a Level-IV Outpatient Treatment Facility. He suggests that he was transferred to Level V at ICF in retaliation for filing several lawsuits. Plaintiff also alleges that the transfer to Level V reduced his parole likelihood from "average probability" to "low probability." (*Id.*, PageID.14.) Again, Plaintiff raised these allegations in *Annabel v. Mich. Dep't of Corr. et al.*, No. 1:14-cv-756 (W.D. Mich.), and the Court dismissed the claim for failure to state a claim. (1:14-cv-756, ECF No. 17, PageID.176-181.)

On May 16, 2014, shortly after Plaintiff arrived at ICF, Defendant Social Worker Apol interviewed Plaintiff. Plaintiff complains that Apol was hostile, critical and aggressive in his demeanor. Apol told Plaintiff, "Spell my name right when you sue me." (*Id.*, PageID.15.) When Plaintiff expressed concerns about eating or taking medication at the facility because of his fear of staff tampering, Apol vowed to keep Plaintiff at ICF, on forced medication, if necessary. Plaintiff told Apol to be sure to get a psychiatrist's signature on the forced-medication order, and Apol assured him that he understood his job. Plaintiff raised these allegations in *Annabel v. Mich. Dep't of Corr. et al.*, No. 1:14-cv-756 (W.D. Mich.). The issues were not fully litigated before the remainder of the complaint was dismissed for lack of prosecution.

Defendant Dr. Yee interviewed Plaintiff on May 19, 2014. Plaintiff explained his long history of bipolar disorder, but Yee allegedly disregarded the proven effectiveness of the psychotropic medications listed in Plaintiff's file. When Plaintiff explained his concerns about eating and taking medication, Yee told him that a hunger strike would not get him transferred. Plaintiff indicated that he would resume eating and taking his medications. Despite Plaintiff's subsequent compliance in taking the medication, Defendant Yee discontinued that medication on May 24, 2014. On May 27, Plaintiff was interviewed by Defendant Apol, an unknown female, and an older male social worker. Apol reviewed Plaintiff's kite complaining about Yee's discontinuation of his medication. Apol was dismissive and told him that his medications would not be resumed until Plaintiff seriously self-injured. An unknown male social worker told Plaintiff that he remembered Plaintiff from 2008 and that he saw that Plaintiff's mental health condition had significantly improved since 2008. The unknown social worker therefore recommended resuming Plaintiff's medication. Defendant Apol rejected the recommendation. These allegations

were raised in *Annabel v. Mich. Dep't of Corr. et al.*, No. 1:14-cv-756 (W.D. Mich.), and the claims were ultimately dismissed without prejudice.

On July 14, 2014, Plaintiff sent three articles of expedited legal mail to Defendant D. Christiansen. Christiansen allegedly signed and pre-dated the receipts as of July 12, 2014, and then allegedly destroyed the documents. On August 4, 2014, an individual mailed to Plaintiff a copy of the complaint in *Annabel v. MDOC et al.*, No. 1:14-cv-756 (W.D. Mich.), but Defendant D. Christiansen did not deliver the mail until October 20, 2014, after unspecified other Defendants had read the complaint and after a first-shift sergeant had interrogated Plaintiff about the complaint.

Plaintiff complains that he has invested much time and money developing his paralegal skills, which he believes could provide a respectable income upon his release. He contends that he invested thousands of dollars in filing fees, legal texts, photocopies, postage, stationery and footlockers. Notwithstanding his alleged property interest in the materials, in March or April 2015, unspecified Defendants ordered the segregation porter to destroy some of Plaintiff's legal property, including paperwork related to one of Plaintiff's prior lawsuits against ICF staff, *Annabel v. Caruso et al.*, 1:09-cv-176 (W.D. Mich.).[2] Plaintiff ultimately filed a claim seeking compensation for his property with the State Administrative Board. He subsequently sent a letter to the board explaining that the MDOC was not acknowledging or processing such claims. He claims that he also received no satisfaction through the grievance process. Plaintiff suggests that he therefore was without a post-deprivation remedy. This claim was raised in *Annabel v.*

---

[2]The Court notes that Defendants were granted summary judgment in the cited action on August 31, 2011. *See Annabel v. Caruso et al.*, No. 1:09-cv-176 (W.D. Mich. Aug. 31, 2011) (ECF Nos. 126-128).

*Mich. Dep't of Corr. et al.*, No. 1:14-cv-756 (W.D. Mich.), and the claim was dismissed with prejudice.

Plaintiff next sweepingly alleges that, between June 17, 2014, and April 24, 2015, "defendants often withheld or damaged Plaintiff's property." During that same time and with an allegedly retaliatory motive, Defendants Apol and Yee allegedly denied Plaintiff psychotropic medication, ostensibly in order to induce mental destabilization. Defendants Apol and Yee allegedly placed him on suicide restrictions, in order to prevent him from accessing his legal property. Plaintiff claims that being held in the stressful environment had caused him to become depressed, unable to have restful sleep, and to be unable to litigate and acquire career skills as effectively as he would like. He asserts that Defendants collectively continue to engage in unfair litigation tactics, as did the defendants in *Annabel v. Armstrong et al.*, No. 1:14-cv-796 (W.D. Mich.), *Annabel v. Caruso et al.*, No. 1:09-cv-176 (W.D. Mich.), and *Annabel v. Heyns et al.*, No. 2:12-cv-13590 (E.D. Mich.).

Plaintiff complains that Defendants Yee and Apol also have demonstrated that their actions are retaliatory, because they have referenced his litigation efforts in his psychiatric medical file, stating on August 29, 2014:

> He is quite litigious, and seems to take pleasure in announcing various lawsuits that he files. He seems to use these legal actions as a way to manipulate placement, with the reasoning that it would be 'unethical' for a provider to continue to provide services if he/she is named as a defendant in his legal action. He has shown himself to be very calculating in this regard.

(Compl., ECF No. 1, PageID.19-20.) On December 29, 2014, Dr. Yee wrote:

> Summary of Progress to Date: Prisoner is resistant to treatment. He remains highly litigious, and uses insults to try to evoke a response that he feels is grievable.

(*Id.*, PageID.20.) Plaintiff contends that the placement of such references in his medical file violates prison policy, and he contends that unnamed officers are able misuse the MDOC database and communications system to view such statements. He argues that this potential for abuse demonstrates that supervisory officials are well aware of his litigation.

Plaintiff next alleges that, on August 4, 2014, a woman named Zoe Keller mailed Plaintiff a copy of his complaint in *Annabel v. Mich. Dep't of Corr. et al.*, No. 1:14-cv-756 (W.D. Mich.). According to the instant complaint, Defendant D. Christiansen allegedly withheld the mail until October 20, 2014, and, during the intervening period, unspecified Defendants read the mail. On August 8, 2014, a first-shift sergeant told Plaintiff that the inspector was investigating Plaintiff for using the mail to smuggle drugs. On August 14, 2014, Plaintiff attempted to mail an expedited discovery request to the attorney in *Annabel v. Heyns et al.*, No. 2:12-cv-13590 (E.D. Mich.), but it was discarded. Plaintiff sent the request again in November, at which time the attorney informed Plaintiff that he had not received the original August mailing.

Plaintiff alleges that, on October 20, 2014, unspecified Defendants destroyed without delivering an order denying leave to amend in *Annabel v. Frost et al.*, No. 2:14-cv-10244 (E.D. Mich.). On February 17, 2015, unspecified Defendants allegedly destroyed without delivering a report and recommendation issued in the same case. The case was dismissed on March 30, 2015, after Plaintiff failed to file objections to the report and recommendation.[3]  Plaintiff

---

[3] The Court notes that, after Plaintiff demonstrated that he had not received the Report and Recommendation, the case was reopened and Plaintiff was granted an extension of time to file objections. *See Annabel v. Frost et al.*, No. 2:14-cv-10244 (E.D. Mich. June 23, 2015) (Ord, ECF. No. 51). After reviewing Plaintiff's objections, the Court again granted summary judgment to Defendants on January 22, 2016. *See id.* (Ord. & J., ECF No. 59-60).

asserts that the repeated interferences with his mail demonstrate that Defendants participated in a common plan organized by a central agent, such as Defendant Heyns.

Plaintiff alleges that, between June 9, 2014, and June 17, 2014, Defendants W. Smith, Norwood and Huss employed prisoner Joseph Halton to harass and threaten Plaintiff by instructing their subordinates to give immunity to Halton for any harassment. Plaintiff recites the following examples of the alleged scheme to allow harassment: Halton screamed vulgarities at Plaintiff on Halton's first morning in the yard and threatened to attack Plaintiff, but staff did not issue a misconduct; Halton made attempts to incite gangs against Plaintiff; on June 17, 2014, Halton made more threats against Plaintiff as Halton left the unit that were condoned by an unnamed African-American officer, causing Plaintiff to "preemptively str[ike] Halton with a bare ink pen" (ECF No. 1, PageID.23). Halton was moved to Segregation Unit 2 on August 4, 2014, where he continued to harass Plaintiff with false statements and allegations. On August 4, 2014, Halton returned from an interview with a sergeant, bragging that he had testified against Plaintiff. Plaintiff contends that Defendants Smith, Norwood and Huss were the only officials who could authorize Halton's new cell assignment. Plaintiff raised all but the last of these allegations about Halton in *Annabel v. Mich. Dep't of Corr. et al.*, No. 1:14-cv-756 (W.D. Mich.), and the Court dismissed the issue against these Defendants on the grounds that the allegations failed to state a claim.

Plaintiff alleges that he arrived in Segregation Unit 2 on the afternoon of June 17, 2014. On June 18, 2014, at 9:30 p.m., Plaintiff damaged a sprinkler to protest staff's failure to provide him bedding and his legal material within the time period required by MDOC policy. Plaintiff contends that Defendants denied his psychotropic medications to destabilize him and cause him harm and to cause him to be placed in segregation. This issue was raised in *Annabel v.*

*Mich. Dep't of Corr. et al.*, No. 1:14-cv-756 (W.D. Mich.), and the claim was dismissed for failure to state a claim.

Plaintiff next alleges that Defendants W. Smith, Norwood and Huss frequently acted in concert with Defendant Novak to deny Plaintiff's requests for law library materials and photocopies. He alleges that the denial of photocopies resulted in the dismissal of his complaint in *Annabel v. Mich. Dep't of Corr.*, No. 1:14-cv-756 (W.D. Mich.). Plaintiff contends that Defendants use prisoner law clerks to retaliate, having them provide only a few cases, marking those cases with "pitchfork gang signs," and marking most requests as "Out: Re-Order." (ECF No. 1, PageID.25.) Plaintiff alleges that, after he confronted unspecified Defendants and Defendant Christiansen (presumably D. Christiansen) in December 2014 and January 2015, the allegedly retaliation increased. Defendant Norwood placed Plaintiff on a law book restriction, allegedly without adequate proof of the misuse of books. Plaintiff also alleges that Defendants used prisoner-porter Jason to attempt to extort fees and sexual favors. Plaintiff complained to Defendant Novak on February 10, 2015. In April 2015, Plaintiff received a misconduct ticket for making false allegations that interfered with the administration of rules. Plaintiff claims that unspecified Defendants frequently used prisoner Jason to enter cells in Segregation Unit 1, so that Jason could pack up or destroy other prisoners' property.

Plaintiff alleges that, on July 9, 2012, he engaged in discussions to settle a civil action, *Annabel v. Caruso et al.*, No. 1:09-cv-176 (W.D. Mich.). Plaintiff signed the settlement agreement on July 18, 2012, in which he obtained a small cash amount and an agreement to provide him a Kosher diet. Plaintiff alleges that Defendants have all acted to impede his rights under that settlement agreement. Between June 17 and July 2, 2014, Plaintiff became afraid of food tampering and refused to accept all meals. During that time, Defendant Kronk allegedly failed to

ensure that Plaintiff received medical evaluations at intervals required by prison policies, and Defendants Yee and Apol allegedly examined him for only a few minutes on a date later than required under prison policy. On June 18, Plaintiff was threatened with foodloaf, followed by one week in which Defendant Zwiker brought him "special delivery duty" meals, consisting of unsealed Kosher meal trays. (ECF No. 1, PageID.26.) Zwiker allegedly denigrated Plaintiff's religion and mockingly described the delicious food. Defendant Zwiker also allegedly withheld legal mail from Plaintiff on three occasions during this period. Plaintiff discovered a staple in his scalloped potatoes on July 7, 2014. Plaintiff also complained about the uncovered food trays. Defendant RUM E. Smith advised Plaintiff in a memorandum that the Kosher trays were never wrapped in cellophane, as it presented a security concern. Plaintiff disputes the truth of that response. On June 24, 2014, Defendants Yee and Apol began forcibly medicating Plaintiff with Thorazine, allegedly in order to prevent Plaintiff from effectively litigating his claims.

On July 9, 2014, Plaintiff's hot tray was mockingly marked with the name "Adiline." Plaintiff demanded to speak with Sergeant Zwiker and took his food tray hostage. Defendant Vannortrick wrote a misconduct against Plaintiff, in which he allegedly defamed Plaintiff by saying that Plaintiff had stated that his "'hemorr[h]oids were inflamed and felt like they were about to set his cell on fire!!'" (ECF No. 1, PageID.27.) Plaintiff alleges that Vannortrick thereby intentionally revealed Plaintiff's embarassing health condition, which, Plaintiff alleges, implied that Plaintiff was a homosexual. Defendant Vannortrick read aloud the statement to an audience of nearly 40 prisoners. Defendant Rykse found Plaintiff guilty of the misconduct on July 21, 2014.

On July 10, 2014, Plaintiff's food tray was mockingly labeled "Alleshia." (*Id.*, PageID.28.) On July 13, 2014, Plaintiff received ketchup packets with his breakfast, instead of

jelly. On July 30, 2014, Plaintiff's breakfast tray was missing the powdered soy milk. Plaintiff complained to Defendants Scott and Norwood, neither of whom corrected the problems. On August 12, 2014, his dinner tray held only a peanut butter and jelly sandwich and a half-cup of potatoes.

Plaintiff told Defendant Apol on August 19, 2014, that he had filed a lawsuit against Apol. In response, Apol allegedly berated Plaintiff.

On August 27, 2014, after allegedly being denied photocopies and expedited legal mail by Defendants Grandy, Zwiker, and E. Smith, Plaintiff held his food slot hostage. He was sprayed with chemical agents, and he was hogtied. Defendants left a noose hanging inside his rear window, low enough for Plaintiff to put the noose around his neck. Defendants Zwiker, Berrington, Bennett, and Scott all observed the noose around Plaintiff's neck for five hours, but they refused to release him, simply writing him false misconduct tickets for disobeying a direct order. At about 10:15 p.m., Officer Braman called the third-shift lieutenant to remove both the noose and the chains.

The following day, Plaintiff held his food slot hostage to protest alleged tampering with his breakfast tray and denial of legal access. Defendants Grandy, Eyer, Burns, and Jensen hogtied Plaintiff again. Later that day, Plaintiff asked King to loosen the belly chain, but King refused, hissing, "You're a piece of shit. In three days I hope you die in those chains." (*Id.*, PageID.32.) Defendants Zwiker, Berrington, Bennett, and Kronk also denied pleas to loosen the chains and denied Plaintiff's requests for water. Plaintiff alleges that he was hogtied in his cell for seven days, from August 28 to September 4, 2014, during which time Defendants Grandy, Eyer, Burns, Zwiker, Bennett, Scott, Berrington, and King all denied Plaintiff meals. Grandy told Plaintiff that Defendant Willie Smith said that Plaintiff needed to stop filing grievances and

lawsuits so that he would not have the problems. When the chains were finally removed on September 4, 2014, Plaintiff dropped to the floor screaming, because the removal of the belly chain tore off skin and scabs. Plaintiff also had sores on his ankles, wrists, and knees. All requests for medical care were denied, and no Defendant documented Plaintiff's injuries. Plaintiff eventually showed his scars to Defendants Sleight and Davis, but they refused to report that Plaintiff had been abused.

Plaintiff was placed on suicide observation status from August 28 through October 10, 2014, and most of the meals he received were non-Kosher finger food or foodloaf. Plaintiff alleges that the deprivations violated his settlement agreement. Plaintiff was told that Defendant Cheney had removed him from the Kosher menu. Cheney did not respond to Plaintiff's complaints. On September 25, 2014, Defendant Scott allegedly forced Plaintiff to accept a non-Kosher foodloaf, and Scott told Plaintiff that he did not care about the Jews. Defendant Zwiker made derogatory remarks about Plaintiff being a child molester and denigrated Plaintiff's mother and his religion. On October 29, 2014, Plaintiff discovered a pea-size stone in his Kosher dinner, and the Islamic crescent moon was marked on his dinner tray. Plaintiff complained to Daugherty, who found Plaintiff's grievances to be factually unsupported.

On November 6, 2014, Plaintiff concluded that Defendants would not be honest, so he sent Defendant Cheney "an accusing kite to end Kosher trays." (*Id.*, PageID.31.) On November 17, 2014, Defendant Daugherty "scorned" Plaintiff in a notice that Plaintiff was being removed from Kosher meals. (*Id.*)

Plaintiff contends that his poor mental health treatment and the poor treatment of others, as evidenced by the four suicides, demonstrate that Defendant Heyns is deliberately indifferent to the quality of prisoner medical care, that Heyns wrongfully diverts funds from

15

medical care to weapons, and that Heyns orchestrated the retaliatory punishment of mentally ill prisoners. Plaintiff also alleges that the long history of staff abuse is well known and condoned by Defendants Heyns, Willie Smith, Norwood and Huss. In addition, he contends that Heyns, W. Smith, Norwood and Huss maintain their corrupt system by promoting the worst offenders: Defendants Christiansen, Woods, King, Zwiker, Rykse and Grandy.

Further, Plaintiff alleges that all Defendants conspired to deny Plaintiff grievance forms and Step-II appeals, refused to deliver or process those grievances, or placed Plaintiff on modified grievance access.

Plaintiff contends that all Defendants have violated his rights under the First Amendment by denying him access to the courts, interfering with his mail, interfering with his religious exercise, and retaliating against him for filing grievances and lawsuits. In addition, Plaintiff contends that Defendants violated his rights under the Fourteenth Amendment (as well as the First Amendment) by repeatedly harassing him on the basis of his religion and coercing him to forfeit his religion and religious diet. He also contends that all Defendants have been deliberately indifferent to his serious medical and mental health needs and to his risks of harm from known staff and prisoner attacks. Further, he argues that the MDOC has denied him the benefits of mental health programs and legal research materials because of his mental illness, ostensibly in violation of the ADA , the RA, and the Fourteenth Amendment. Moreover, Plaintiff alleges that Defendants have violated RICO by their multiple illegal actions taken against Plaintiff. Finally, Plaintiff complains that Defendants have violated a variety of state laws.

Plaintiff seeks declaratory and injunctive relief and specific performance of his settlement agreement, together with compensatory and punitive damages.

## II.     Previously Dismissed Claims

As earlier discussed, the Sixth Circuit has affirmed this Court's dismissal of numerous claims and Defendants: dismissal of the conspiracy claims against all Defendants; dismissal of the MDOC as a Defendant; dismissal of the ADA and RA claims against all Defendants; and the dismissal of numerous claims on grounds of res judicata, which this Court summarized as follows in its October 14, 2016, opinion:

> As a consequence, the following issues were frivolously brought in this action, because they are barred by res judicata: Plaintiff's conspiracy claim preceding July 2014[;] Plaintiff's claims involving his transfer to ICF on May 16, 2014; the claims involving Plaintiff's inability to practice his "business" as a prison paralegal; Plaintiff's claims that Defendant Heyns and two ARF officials interfered with his legal mail between March 24, 2014[,] and April 10, 2014, and that Defendant Zwiker interfered with delivery of his incoming mail between June 17 and July 2, 2014; Plaintiff's claim that Defendant MDOC violated his rights under the ADA and the RA by not adequately treating his mental illness and forcibly medicating him; Plaintiff's RICO claims; Plaintiff's allegations that Defendants Smith, Norwood, and Huss retaliated against him for filing suit by having Prisoner Halton harass Plaintiff; Plaintiff's claim that Defendant Zwiker violated Plaintiff's First Amendment religious rights by mocking his Kosher diet by regularly uncovering his food tray and saying how delicious the food looked[4]; Plaintiff's claim [that] Defendant Heyns participated in the denial of medical care to Plaintiff by Defendants Apol and Yee; and Plaintiff's claims that Defendants denied him grievance forms and placed him on modified grievance access in retaliation for his exercise of his First Amendment rights.

(Op., ECF No. 9, PageID.203; *see also* 6th Cir. Ord., ECF No. 19, PageID.297-298.) As a consequence, this Court's October 14, 2016, determinations on these issues remain the law of this case.

## III.    Merits Review of Remaining Claims

In light of the Sixth Circuit's remand, which held that this Court may not dismiss Plaintiff's misjoined claims, the Court will now consider whether any of the remaining claims may be properly dismissed as frivolous or for failure to state a claim.

---

[4] Plaintiff also claims, as he did in Case No. 1:14-cv-756, that Defendant Zwiker mocked his religion by appearing at his cell door with a copy of the Qu'ran and the Talmud. This claim also was dismissed by the court in that case, and it, too, is barred by the doctrine of res judicata.

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

Moreover, a claim may be dismissed as frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Brown v. Bargery*, 207 F.3d 863, 866 (2000); *Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). Claims that lack an arguable or rational basis in law include claims for which the defendants are clearly entitled to immunity and claims of infringement of a legal interest which clearly does not exist; claims that lack an

arguable or rational basis in fact describe fantastic or delusional scenarios. *Neitzke*, 490 U.S. at 327-28; *Lawler*, 898 F.2d at 1199. The Court has the "unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id.*, 490 U.S. at 327. "A finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). Examples of claims lacking rational facts include a prisoner's assertion that Robin Hood and his Merry Men deprived prisoners of their access to mail or that a genie granted a warden's wish to deny prisoners any access to legal texts. *See Neitzke*, 490 U.S. at 327-28; *Lawler*, 898 F.2d at 1198-99. An *in forma pauperis* complaint may not be dismissed, however, merely because the court believes that the plaintiff's allegations are unlikely. *Id.*

### A.   Allegations Unattributed to Individual Defendants

Among the litany of Plaintiff's allegations about individual Defendants, Plaintiff alleges a series of ostensible violations that he conclusorily attributes to Defendants generally. First, he alleges that "defendants authorized a prisoner segregation porter to pack and destroy some of Plaintiff's legal property . . . ." (Compl., ECF No. 1, PageID.18.) He argues that such authorization was barred by prison policy. (*Id.*, PageID.25-26.) Plaintiff next alleges that "defendants often withheld or damaged Plaintiff's property without a legitimate penological objective to deprive him of use and equitable title thereof and to diminish the principle investment." (*Id.*, PagedID.18) At another point, Plaintiff alleges that "defendants destroyed without delivery a Report & Recommendation [R&R]," which resulted in the dismissal of Plaintiff's complaint on the grounds of Plaintiff's failure to file objections to the R&R. (*Id.*, PageID.22.) And he alleges generally that, between June 17, 2014, and April 24, 2015, he has

suffered recurrent interference with his ingoing and outgoing mail by unnamed persons, though ostensibly orchestrated by Defendant Heyns. (*Id.*, PageID.18.) Further, Plaintiff contends that Defendants generally have mishandled his grievances. (*Id.*, PageID.35.) Plaintiff also alleges that unknown Defendants marked his meals with the names of "Alleshia" and "Adiline," to retaliate against Plaintiff for his religious views. Finally, Plaintiff complains about certain problems with his food trays. he alleges that unknown Defendants provided him meal trays that were deficient in one or more ways: on July 13, 2014, Plaintiff's breakfast tray contained ketchup instead of jelly; on July 30, 2014, his breakfast tray was missing the powdered soy milk; on August 12, 2014, his dinner tray included only a peanut butter and jelly sandwich and a half-cup of potatoes. He also claims that unspecified Defendants are responsible for the presence of a staple in his scalloped potatoes on July 7, 2014, and a pea-sized stone in his Kosher dinner on October 29, 2014.

1.      allowing prisoner to pack and destroy legal property

Plaintiff's allegations respecting the packing and destroying of his legal property are without merit for numerous reasons. First, Plaintiff utterly fails to name an individual Defendant who was responsible for the alleged violations, and his claim is wholly conclusory, containing no facts concerning the what, where, or when of the alleged takings. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555.

Second, Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not

20

"without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

Third, to the extent that Plaintiff alleges that Defendants violated prison policy by permitting a segregation porter to pack his property, he fails to raise a cognizable claim. A

defendant's failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

2. other takings of Plaintiff's property

Plaintiff next claims that unspecified defendants have taken and/or destroyed his property on unspecified occasions. He asserts that such takings have deprived him, not only of the use of the property, but also of earnings on the investment in his legal library. Plaintiff's allegations again fail to state a claim for multiple reasons.

First, Plaintiff's allegations are too conclusory to state a claim, containing no specifics about timing or the personal involvement of any Defendant. *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555. Second, as previously discussed, a due process claim based on the taking of property such as this one is barred by the doctrine of *Parratt*, 451 U.S. at 537.

Third, to the extent that Plaintiff complains about interference with his business, as the Court decided in *Annabel*, No. 1:14-cv-756 (W.D. Mich.), Plaintiff "fails to state a due process claim arising from any interference with his prison employment." (No. 1:14-cv-756, PageID.173.) *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v.*

*Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same). Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730 at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). As previously discussed, Plaintiff's claim that he was being denied his ability to practice his business as a prison paralegal was previously decided against him and is therefore barred by the doctrine of res judicata. (Op., ECF No. 9, PageID.203.)

### 3. interference with legal mail

Plaintiff alleges that Defendants collectively interfered with the delivery of his legal mail, thereby preventing him from receiving and timely objecting to an R&R in *Annabel v. Heyns*, No. 2:12-cv-13590 (E.D. Mich.). He also alleges that defendants interfered with his legal mail on multiple, unspecified occasions.

Plaintiff's allegation concerning the failure to deliver the R&R issued in *Annabel v. Heyns*, is barred for two reasons: (1) it is wholly conclusory as to who interfered with his legal mail, and it therefore fails to state a claim; and (2) the claim was previously decided against him in *Annabel v. Mich. Dep't of Corr.*, No. 1:14-cv-756 (W.D. Mich.), when he accused Defendant Heyns and non-defendants Campbell and Nichols of being responsible for the interference. The claim therefore is barred by the doctrine of res judicata, as this Court held in its October 14, 2016, opinion (Op., ECF No. 9, PageID.203), and as the Sixth Circuit affirmed (6th Cir. Order, ECF No. 19, PageID.297-298).

Plaintiff's allegations against all Defendants concerning interference with his legal mail on other occasions are wholly conclusory as to what, when, and by whom such interference occurred. Such conclusory allegations fail to state a claim. *Iqbal*, 556 U.S. at 678-79.

4.     interference with grievances

Plaintiff sweepingly alleges that Defendants interfered with his filing of grievances and appeals and/or placed him on modified grievance access for filing his grievances. (Compl., ECF No. 1, PageID.35.) Once again, Plaintiff's allegation is wholly conclusory, lacking specifics about which grievances were involved and who interfered with those grievances. It therefore fails to state a claim.

In addition, interference with the grievance process does not violate the Due Process Clause, does not deprive Plaintiff of his right to access the courts or the right to petition government, and does not amount to adverse action sufficient to support a claim for retaliation. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Moreover, Defendants' actions have not barred Plaintiff from petitioning the government to remedy his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415-16 (6th Cir. 2014) (citing *North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Further, even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) could not be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001).

For similar reasons, denial of access to the grievance process does not support a retaliation claim, because it does not rise to the level of adverse action "that would deter a person of ordinary firmness from continuing to engage in that conduct." *Thaddeus-X v. Blatter*, 175 F.3d

378, 394 (6th Cir. 1999). As discussed, denial of access to the grievance process could not deprive Plaintiff of the ability to file civil rights actions in federal court, because 42 U.S.C. §1997e(a) only requires prisoners to exhaust "such administrative remedies as are available" prior to filing suit in federal court. If a prisoner denied access to the grievance process, he has exhausted his "available" administrative remedies as required by § 1997e(a). The Sixth Circuit repeatedly has recognized that limitations on a prisoner's ability to pursue grievances does not amount to adverse action. *See, e.g., Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005).

5.    mocking of religion

Plaintiff contends that unknown Defendants put the names "Alleshia" and "Adiline" on his food trays on July 9 and 10, 2014. Plaintiff asserts that Defendants used the names, believing they were Jewish names, in order to retaliate against Plaintiff for his religious views or for his filings of grievances and lawsuits. In addition, Plaintiff arguably suggests that the mocking names violated his rights under the Eighth Amendment.

Plaintiff's allegations of retaliation are wholly conclusory both as to the responsible Defendant and as to the reason for the use of the names on his food trays. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Plaintiff merely alleges the ultimate fact of retaliation in this action. As the Court has discussed, to survive initial screening, a plaintiff must allege facts sufficient to state a "plausible" claim. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). Here, Plaintiff suggests that the names were used to retaliate for Plaintiff's practice of his religion or for his filing of grievances. But Plaintiff does not indicate who was responsible or provide factual support for his allegation that the names were believed by those unnamed Defendants to be Jewish names. Indeed, it is far more likely that, while the names "Alleshia" and "Adiline" were meant to mock, they were mere plays on Plaintiff's own name of "Annabel." "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Similarly, to the extent that Plaintiff suggests that the use of mocking names violated his rights under the Eighth Amendment, his claims also fail. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v.*

*Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim against unknown Defendants arising from his alleged verbal abuse.

6.      food tray deficiencies, stone in food, denial of meals

Plaintiff alleges that, on July 7, 2014, he discovered a staple in his scalloped potatoes.  On July 13, 2014, Plaintiff's breakfast tray contained ketchup packs, instead of jelly.  On July 30, 2014, his breakfast tray was missing the powdered soy milk.  On August 12, 2014, his dinner tray contained only a peanut butter and jelly sandwich and a half-cup of potatoes.  Plaintiff also alleges that he found a pea-sized stone in his Kosher meal on October 29, 2014.  Finally, Plaintiff alleges that, after forcing him to accept Kosher trays on November 7, 2014, and unknown group of staff members failed to feed him for three days, when he refused to accept his Kosher meal tray.  Taken together, Plaintiff appears to allege that unknown Defendants deprived him of necessary food or provided him contaminated food, in violation of the Eighth Amendment.

"[T]he Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832).  The Constitution "does not mandate comfortable prisons," however.  *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 960, 954 (6th Cir. 1987).  Thus, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation.  *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (same); *see*

*also Berry v. Brady*, 192 F.3d 504, 507-08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, No. 01–17355, 2003 WL 21436162, at *1 (9th Cir. June 16, 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04–CV–1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).

In *Richmond*, the Sixth Circuit determined that a prisoner who was deprived of five meals over three consecutive days, and a total of seven meals over six consecutive days, did not state a viable Eighth Amendment claim, because he "does not allege that his health suffered as a result of not receiving the meals." *Richmond*, 450 F. App'x at 456. In *Cunningham*, the Sixth Circuit determined that providing a prisoner only one meal a day for over two weeks was not an Eighth Amendment violation, because the meals provided were adequate to sustain normal health. *Cunningham*, 667 F.2d at 566.

Here, Plaintiff alleges that he did not receive certain items from three meals over the course of one month between July 13 and August 12, 2014. Such allegations fall far short of the demonstrating that he was deprived of food within the meaning of the Eighth Amendment. *See Cunningham*, 667 F.2d at 566. Plaintiff does not allege that the meals he received over time provided inadequate nutrition to sustain health. *Id.* Similarly, although the denial of meal trays for three days in November 2014 may have been unpleasant, Plaintiff does not allege that his health suffered as a result of the deprivation. *Richmond*, 450 F. App'x at 456. He also fails to allege that any individual Defendant was deliberately indifferent in the series of denial of food trays. Moreover, according to Plaintiff's own allegations, he was denied meals, not for punitive reasons,

but because he refused to accept the Kosher meal trays issued to him. Under these circumstances, Plaintiff does not state a plausible claim against any Defendant based on the variations to his meals.

Plaintiff's allegations concerning the presence of a staple in one meal and a pea-sized stone in a meal three months later also fall short of stating an Eighth Amendment claim. In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* Plaintiff's allegation concerning the stone and staple utterly fails to allege deliberate indifference. At best, he alleges that someone was negligent in preparing his meal. Allegations of negligence fall short of the deliberate indifference required to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence"). Moreover, the Sixth Circuit consistently has held that isolated incidents of foreign bodies, even rodents and insects, surfacing in the food served to prisoners do not constitute an Eighth Amendment violation. *Tucker v. Rose*, 955 F. Supp. 810, 815 (6th Cir. 1997) (citing *Estelle*, 429 U.S. at 106); *see also Balcar v. Smith*, No. 17-5159, 2017 WL 3613479, at *2 (6th Cir. Jul. 17, 2017) (holding that isolated exposure to foreign bodies in food, including those of rodents and insects, does not constitute an Eighth Amendment violation); "The fact that the [prison] food occasionally contains

foreign objects or is sometimes served cold, while unpleasant, does not amount to a constitutional deprivation." *Smith v. Younger*, No. 98-5482, 1999 U.S. App. LEXIS 20168, at *5, 1999 WL 623355 (6th Cir. Aug. 9, 1999) (affirming district court's dismissal of plaintiff's Eighth Amendment claim based on the presence of a worm in her peanut butter).

In sum, Plaintiff's allegations concerning the taking or destruction of his property, interference with his legal mail, interference with his grievances, harassing language, deprivations of food and food items, and the presence of a staple in one meal and a stone in another meal will be dismissed because they fail to state a claim and/or are frivolous.

B.    Retaliation

Plaintiff alleges that Defendants W. Smith, Norwood, Huss, E. Smith, Grandy, and Zwiker retaliated against him when they did not given him bedding within 24 hours of his arrival in segregation, despite the fact that most other prisoners received bedding and supplies within that time.  He also claims that he did not receive hygiene supplies or cleaning supplies after his arrival in segregation on June 17, 2014, until July 2, 2014.  Plaintiff also alleges that Defendant VanNortrick retaliated against him by filing a retaliatory misconduct charge against Plaintiff and making statements that revealed to staff and prisoners that Plaintiff has hemorrhoids.  In addition, Plaintiff alleges that Defendants Apol and Yee retaliated against him for his filing of lawsuits and grievances by taking him off medications that worked and subsequently forcibly medicating him. Further, Plaintiff generally alleges that all Defendants retaliated against him for exercising his First Amendment rights.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a

person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

1. Defendants W. Smith, Norwood, Huss, Grandy & Zwiker

Plaintiff raised his retaliation claim about his lack of bedding and hygiene supplies in *Annabel v. Mich. Dep't of Corr.*, No. 1:14-cv-756 (W.D. Mich.), though he did not specify the Defendants involved in the allegedly unconstitutional actions, and the Court dismissed the claim for failure to state a claim. (No. 1:14-cv-756, ECF No. 17, PageID.179.) Although the Court neglected to include this claim in the list of claims barred by res judicata set forth in the October 14, 2016, opinion, the claim unquestionably is barred by that doctrine.

> Res judicata is often analyzed further to consist of two preclusion concepts: "issue preclusion" and "claim preclusion." Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. . . . This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar.

*Migra v. Warren City School District Board of Education,* 465 U.S. 75, 77 n.1 (1984) (citation omitted). The doctrine of claim preclusion provides that, if an action results in a judgment on the merits, that judgment operates as an absolute bar to any subsequent action on the same cause between the same parties or their privies, with respect to every matter that was actually litigated in the first case, as well as every ground of recovery that might have been presented. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994); *see Kremer v. Chem. Const. Corp.*,

456 U.S. 461, 467 n.6 (1982); *see also Bowen v. Gundy*, No. 96-2327, 1997 WL 778505, at *1 (6th Cir. Dec. 8, 1997). Claim preclusion operates to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). In order to apply the doctrine of claim preclusion, the court must find that (1) the previous lawsuit ended in a final judgment on the merits; (2) the previous lawsuit was between the same parties or their privies; and (3) the previous lawsuit involved the same claim or cause of action as the present case. *Allen*, 449 U.S. at 94; *accord Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). An action that is barred by res judicata is legally frivolous. *See, e.g., Taylor v. Reynolds*, 22 F. App'x 537, 538 (6th Cir. 2001); *Hill v. Elting*, 9 F. App'x 321 (6th Cir. 2001).

Both issue and claim preclusion are applicable here. All of the Defendants named in this allegation were named as Defendants in the earlier action. Although Plaintiff did not name any specific Defendant as the responsible party on his claim in Case No. 1:14-cv-746, he named the defendants generally, which would have included Defendants W. Smith, Norwood, Huss, E. Smith, Grandy, and Zwiker. The issues were actually litigated and decided against Plaintiff in the earlier action in relation to these Defendants. Issue preclusion therefore bars relitigation of the claims here. Moreover, even if Plaintiff had now named additional possible Defendants on these issues, which were raised and denied in the earlier action, his claims should have been advanced in that case and so are barred by the doctrine of claim preclusion.

Plaintiff's claims regarding the denial of bedding and hygiene supplies against Defendants W. Smith, Norwood, Huss, E. Smith, Grandy, and Zwiker therefore are frivolous, because they are barred by the doctrine of res judicata.

2. Defendant VanNortrick

Plaintiff alleges that Defendant VanNortrick retaliated against him when, on July 9, 2014, VanNortrick wrote Plaintiff a misconduct charge that included a statement that Plaintiff had said that his "hemorr[h]oids were inflamed and felt like they were about to set his cell on fire!!" (Compl., ECF No. 1, PageID.27.)  Plaintiff also complains that Van Nortrick read the statement out loud to approximately 40 prisoners.

Plaintiff's retaliation claim fails at the first step, because Plaintiff does not allege that he was engaged in protected conduct.  Indeed, he alleges that he took his food slot hostage, demanded to speak with Sergeant Zwiker about his dissatisfaction with his meals, and disobeyed VanNortrick's direct order.  The Sixth Circuit has recognized that behavior that violates prison rules is not conduct protected by the First Amendment.  *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (a prisoner's act of calling the hearing officer a "foul and corrupt bitch" was not protected conduct because such behavior fell within the definition of "insolence" under the MDOC Policy Directive governing prisoner misconduct); *Caffey v. Maue*, 679 F. App'x 487 (7th Cir. 2017) (holding that an inmate's name-calling of guards (calling them unprofessional) was a challenge to the guards' authority that was not protected by the First Amendment); *Felton v. Huibregtse*, 525 F. App'x 484, 487 (7th Cir. 2013) (holding that the use of disrespectful language was not protected conduct) (citing cases); *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 858, 864 (5th Cir. 2004) (concluding that an inmate who accused a chaplain of theological errors during a religious service had engaged in an unprotected challenge to institutional authority).

Because Plaintiff's allegations reveal that he was not engaged in protected conduct, his retaliation claim against Defendant VanNortrick will be dismissed for failure to state a claim.

### 3. Defendants Apol & Yee

Upon initial screening, the Court concludes that Plaintiff has adequately alleged a retaliation claim against Defendants Apol and Yee. The Court therefore will order service of the claim on those Defendants.

### C. Keeping and Promoting Officials Who Violate Rights

In a one-paragraph statement, Plaintiff alleges that Defendants Heyns, W. Smith, Norwood, and Huss violated his rights by condoning the long history of staff abuse at ICF and promoting the worst violators of prisoner rights, such as Defendants (unknown) Christiansen, Woods, King, Zwiker, Rykse, and Grandy. (Compl., ECF No. 1, PageID.35.)

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555. The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Plaintiff's claim is wholly conclusory. Indeed, it requires an unsupported inference about some Defendants from other conclusory and factually unsupported allegations concerning other Defendants. Such allegations fall short of the pleading standard of *Twombly* and *Iqbal*.

D.    Access to the Courts

Plaintiff alleges that Defendants W. Smith, Norwood, and Huss

> often retaliate in concert with Defendant Novak to deny Plaintiff's request for law
> library materials or photocopies.  The denial of photocopies in August 2014 led to
> dismissal of Annabel, II v. M.D.O.C., et al. (USDC W.D. Mich. No. 1:14-cv-756)
> for failure to prosecute, which also prevented amendment of the complaint.

(Compl., ECF No. 1, PageID.24-25.)  At a later point in the complaint, Plaintiff alleges that

Defendants Grandy, Zwiker, and E. Smith (and their subordinates) denied him photocopies and

expedited legal mail forms, which purportedly led to the dismissal of his complaint in *Annabel v.*

*Mich. Dep't of Corr.*, No. 1:14-cv-756.  (*Id.*, PageID.31.)  Plaintiff also complains that Defendants

generally use prisoner law clerks to effectuate their retaliation by marking many items on library

requests as "Out-Re-Order" or drawing pitchfork gang signs on the request slips.    (*Id.*,

PageID.24.25.)

It is well established that prisoners have a constitutional right of access to the courts.

*Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states

must protect the right of access to the courts by providing law libraries or alternative sources of

legal information for prisoners.  *Id.* at 817.  The Court further noted that in addition to law libraries

or alternative sources of legal knowledge, the states must provide indigent inmates with "paper

and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail

them." *Id.* at 824-25.  The right of access to the courts also prohibits prison officials from erecting

barriers that may impede the inmate's access to the courts.  *See Knop v. Johnson*, 977 F.2d 996,

1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not,

however, without limit.  In order to state a viable claim for interference with his access to the

courts, a plaintiff must show "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also*

*Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.  In other words,

a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program

or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a

nonfrivolous legal claim.  *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413,

416 (6th Cir. 1996).  The Supreme Court has strictly limited the types of cases for which there may

be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into
> litigating engines capable of filing everything from shareholder derivative actions
> to slip-and-fall claims.  The tools it requires to be provided are those that the
> inmates need in order to attack their sentences, directly or collaterally, and in order
> to challenge the conditions of their confinement.  Impairment of any other litigating
> capacity is simply one of the incidental (and perfectly constitutional) consequences
> of conviction and incarceration.

*Lewis*, 518 U.S. at 355.  "Thus, a prisoner's right to access the courts extends to direct appeals,

habeas corpus applications, and civil rights claims only."  *Thaddeus-X v. Blatter*, 175 F.3d 378,

391 (6th Cir. 1999) (en banc).  Moreover, the underlying action must have asserted a non-frivolous

claim.  *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis*

changed actual injury to include requirement that action be non-frivolous).  In addition, the

Supreme Court squarely has held that "the underlying cause of action . . . is an element that must

be described in the complaint, just as much as allegations must describe the official acts frustrating

the litigation."  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353

& n.3).  "Like any other element of an access claim, the underlying cause of action and its lost

remedy must be addressed by allegations in the complaint sufficient to give fair notice to a

defendant."  *Id.* at 416.

Plaintiff suggests that Defendants W. Smith, Norwood, Huss, Novak, Grandy,

Zwiker, and E. Smith denied him access to the courts by refusing to make three copies of the

complaint, as directed by the Court in its August 21, 2014, order partially dismissing and partially

ordering service of his action in *Annabel v. Mich. Dep't of Corr.*, No. 1:14-cv-756 (W.D. Mich.) (ECF No. 18). Plaintiff alleges that the refusal to make copies resulted in the dismissal of his action for lack of prosecution.

With respect to Defendants W. Smith, Norwood, and Huss, however, Plaintiff's allegations consist of nothing more than unsupported inferences from his conclusory allegation that these Defendants had interfered on past occasions and therefore must be involved. Plaintiff fails to allege facts suggesting that Defendants W. Smith, Norwood, and Huss engaged in active conduct related to the denial of his copies of the complaint. Plaintiff's conclusory allegations fall far short of stating a plausible claim that W. Smith, Norwood, or Huss was in any way involved in the denial of photocopies for service of the complaint.

Moreover, Plaintiff's suggestion – that his action was dismissed because Defendants Novak, Grandy, Zwiker, and E. Smith refused to make copies of his complaint for service in Case No. 1:14-cv-756 – is at odds with the record in that case. First, the order requiring Plaintiff to request copies expressly instructed Plaintiff that, if the prison refused to make him copies, he could alternatively file an affidavit explaining why he could not produce the copies, which could result in the Court making the necessary copies and charging the MDOC for the cost of copying, in accordance with a memorandum of understanding between the MDOC and the Court and memorialized in this Court's 2003 administrative order. (1:14-cv-756, ECF No. 18, PageID.197; Admin. Ord. 03-029 (W.D. Mich. May 12, 2003).) As a result, Plaintiff was fully able to comply with the Court's order, even if he could not get copies of the complaint. Plaintiff's complaint thus was dismissed not only because he failed to provide copies, but also because he did not comply in the alternative fashion – by filing an affidavit explaining why he could not provide the copies.

Further, Plaintiff never filed a motion for reconsideration in Case No. 1:14-cv-756, explaining that he was unable to comply with the Court's order. Instead, Plaintiff waited five months after the dismissal of the complaint to attempt to file an even more detailed amended complaint, a filing the Court rejected. (1:14-cv-756, ECF No. 22, PageID.202.) Plaintiff's proposed amended complaint, which admitted to some of the defects of his original complaint, clearly indicated that Plaintiff's failure to provide copies was part of a strategy to clarify his numerous claims and to seek reconsideration of the partial dismissal. In addition, in his proposed amended complaint, Plaintiff did not allege that copies were denied by Defendants W. Smith, Norwood, Huss, and Novak; he instead claimed that copies were denied solely by correctional officers Grandy and Zwiker and RUM E. Smith. (*Id.*, PageID.253.) Plaintiff also admits in the proposed amended complaint that, on August 27, 2014, only a few days after he received the Court's August 21, 2014, order to make copies and well before they were due, Plaintiff became frustrated with not having yet received the copies he wanted. Instead of either waiting a bit longer or advising the Court that his copies were being denied (as explicitly instructed by the Court), Plaintiff elected to hold his food slot hostage and to disobey direct orders, which resulted in numerous consequences, including being sprayed with chemical agents, being placed in constraints, and being charged with misconducts, all of which may have interfered with his ability to litigate for some period. (*Id.*)

By Plaintiff's own admissions and the record before the Court, therefore, no basis exists for finding that the actions of Defendants W. Smith, Norwood, Huss, Novak, Grandy, Zwiker, or E. Smith (or any other official) resulted in Plaintiff's failure to comply with the Court's order and the resulting dismissal of his complaint in Case No. 1:14-cv-756. Plaintiff therefore cannot demonstrate actual injury resulting from any Defendants' alleged interference with his right

to access the courts.  In addition, because Plaintiff makes no other allegation against Defendant

Novak, Defendant Novak will be dismissed from the action.

E.    <u>Eighth Amendment</u>

Plaintiff alleges that numerous individual Defendants have denied his rights under

the Eighth Amendment.  First, Plaintiff contends that Defendants Grandy, Eyer, Burns, Zwiker,

Bennett, Scott, Berrington, King, and Kronk placed him and kept him in belly chains ("hog-tied")

from August 28 to September 4, 2014, causing him to experience scabbing and scars to his belly,

ankles, wrists, and they refused his requests for medical care once he was released.  Plaintiff also

contends that these Defendants refused to provide him with meals and water during the time he

was hog-tied, and he alleges that these Defendants placed or left a noose in his cell, near his head,

and encouraged him to use it.  Second, Plaintiff alleges that, on July 17, 2014, Defendant Scott

threatened Plaintiff with foodloaf and attempted to have Plaintiff served foodloaf the following

morning.[5]  Third, he alleges that Defendants Apol and Yee provided constitutionally deficient

mental health treatment to him and failed to adequately monitor him during the period he refused

all food, between June 17 and July 2, 2014.  Fourth, he claims that Defendants Robert Davis and

(unknown) Sleight deprived him of his Eighth Amendment rights when they failed to accede to

Plaintiff's request to report Plaintiff's scars (not active injuries) as evidence of physical abuse,

despite the fact that he informed them that the scars were caused by keeping Plaintiff hog-tied for

days.  Fifth, Plaintiff alleges that Defendant Heyns, by budget-cutting, caused Plaintiff to receive

inadequate mental health treatment.  Sixth, Plaintiff complains that, between August 28 and

October 10, 2014, most of his meals were non-Kosher finger food or foodloaf.  The Eighth

---

[5] Plaintiff also describes Defendant Scott as "an overt racist African-American officer," but he makes no attempt to allege facts suggesting that the threat was racially based, nor does he attempt to allege facts supporting an Equal Protection claim.  The Court therefore will consider only the Eighth Amendment claim against Defendant Scott.

Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

1.      hog-tying and failure to feed: Defendants Grandy, Eyer, E. Smith, Burns, Zwiker, Bennett, Scott, Berrington, King, and Kronk

Plaintiff alleges that Defendants Grandy, Eyer, Burns, Zwiker, Bennett, Scott, Berrington, King, and Kronk placed him and kept him in belly chains for seven days, refused to loosen the chains, denied Plaintiff food and water, left a noose in the cell next to Plaintiff's head and taunted Plaintiff to use it, and denied him medical treatment after finally releasing him from

the chains. Upon review, the Court concludes that Plaintiff's allegations are sufficient to state an Eighth Amendment claim against Defendants Grandy, Eyer, E. Smith, Burns, Zwiker, Bennett, Scott, Berrington, King, and Kronk.

2.      finger food and foodloaf:  Defendant Scott

Plaintiff alleges that, on July 17, 2014, Defendant Scott threatened Plaintiff with being placed on foodloaf. He also contends that Scott attempted to ensure that Plaintiff received foodloaf the following day. In addition, Plaintiff complains that he received finger food and foodloaf on a number of occasions while he was on suicide watch from August 28, 2014, through October 10, 2014.

Plaintiff's Eighth Amendment claim regarding the foodloaf restriction fails. The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. With regard to food, prisoners must receive adequate nutrition to maintain normal health; the food need not be tasty or aesthetically pleasing. *See Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977). The Sixth Circuit has repeatedly held that a diet of foodloaf does not violate the Eighth Amendment because nutritional and caloric requirements are met. *See, e.g.*, *Payton-Bey v. Vidor*, No. 94-2472, 1995 WL 603241, at *1 (6th Cir. Oct. 12, 1995); *Hinton v. Doney*, No. 93-2050, 1994 WL 20225, at *2 (6th Cir. Jan. 26, 1994); *Boswell v. Meyers*, No. 89-2144, 1990 WL 109230, at *1 (6th Cir. Aug. 2, 1990). Plaintiff makes no allegations that Scott even placed him on foodloaf, much less that Plaintiff failed to receive adequate nutrition. Therefore, Plaintiff fails to state an Eighth Amendment claim.

Moreover, to the extent that Plaintiff seeks to raise a due process claim based on the threat of being placed on foodloaf or being placed on foodloaf or finger food for nearly two

weeks, he fails to state a claim. Plaintiff enjoys no constitutional or state-created right to be free from a temporary diet of foodloaf. The Supreme Court has held that state created liberty interests "will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 483 (1995); *see also Rimmer-Bey v. Brown*, 62 F.3d 789-790-91 (6th Cir. 1995). A temporary foodloaf diet is not an atypical and significant hardship for segregation prisoners who have engaged in misconduct. *See Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541 (6th Cir. Feb. 1, 1996); *Johnson v. Gummerson*, No. 99-0071, 1999 WL 822523, at *1 (2d Cir. Sept. 24, 1999).

Plaintiff, therefore, fails to state a claim based on Scott's threats to place him on foodloaf, whether considered under the Eighth Amendment or the Due Process Clause.

### 3.    medical care:  Defendants Apol, Yee, Davis & Sleight

Plaintiff complains that Defendants Apol and Yee took him off of his regularly prescribed prescriptions for treating his mental health, without regard for the consequences. In addition, Plaintiff alleges that Defendants Apol and Yee forcibly medicated him with an unnecessary drug and failed to adequately monitor him during his food strike. Plaintiff also complains that Defendants Davis and Sleight refused to report that Plaintiff had been abused after he showed them his scars.

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Farmer*, 511 U.S. at 834; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference contains both an objective and a subjective component.

*Farmer*, 511 U.S. at 834. To meet the objective component, a plaintiff must allege that his medical need is objectively serious and obvious. *Farmer*, 511 U.S. at 834; *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). To meet the subjective component "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Upon initial review, the Court concludes that Plaintiff has sufficiently alleged an Eighth Amendment claim against Defendants Apol and Yee.

Plaintiff's allegations against Defendants Davis and Sleight, however, fall far short of demonstrating that they were deliberately indifferent to his serious medical needs. Indeed, Plaintiff makes no allegation that he had any serious medical need at the time he showed his scars to Defendants Davis and Sleight. Instead, he alleges only that Defendants Davis and Sleight refused his demand that they report that those scars were caused by prior physical abuse. Such allegations fail to state an Eighth Amendment claim.

F.     Due Process & Invasion of Privacy – Defendants VanNortick, Woods, and Rykse

Plaintiff alleges that, in July 9, 2014, in order to object to the labeling of his hot-food tray, he took his food slot hostage and demanded to speak with Defendant Zwiker. Defendant VanNortrick wrote a misconduct ticket against Plaintiff, which apparently included allegations that Plaintiff had made a statement that his "hemorr[h]oids were inflamed and felt like they were about to set his cell on fire!!" (Compl., ECF No. 1, PageID.27.) Plaintiff alleges that the statement was false, violated his right to privacy, and subjected him to a loss of reputation and the risk of harassment by other prisoners, because the statement suggested that he was a homosexual. He also complains that Defendant VanNortrick read the misconduct ticket to a group of 40 prisoners, thereby publishing the statements to others. Plaintiff contends that Defendant Rykse violated his

45

right to procedural due process and failed to correct VanNortrick's invasion of privacy by finding Plaintiff guilty of the minor misconduct charge and thereby declaring the statement to be true. Similarly, Plaintiff alleges that Defendant Woods, by upholding the misconduct finding on appeal, maintained a false statement of fact as a matter of public record.

1.    procedural due process

Plaintiff appears to allege that Rykse's and Wood's results and findings on VanNortrick's misconduct charge violated the procedural protections of the Fourteenth Amendment's Due Process Clause. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA). Therefore, contrary to the assertion in his complaint, Plaintiff should not have been denied good time or disciplinary credits as a result of his Class II misconduct convictions. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2

(6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from his minor misconduct conviction or the findings of facts contained therein.

2.    right to privacy – substantive due process

Plaintiff next claims that all three Defendants disclosed his personal information in violation of his right to privacy. Plaintiff appears to contend that he has a right to informational privacy grounded in the Fourteenth Amendment.

> Two types of interests have been identified by the Supreme Court as protected by the right to privacy that is rooted in the substantive due process protections of the Fourteenth Amendment. One is the interest in "independence in making certain kinds of important decisions," *Whalen v. Roe*, 429 U.S. 589, 599-600 & n.26 (1977) (noting that these decisions have been characterized as dealing with "matters relating to procreation, marriage, contraception, family relationships, and child rearing and education." (quoting *Paul v. Davis*, 424 U.S. 693, 713 (1976)). The other type of privacy interest applicable to individuals is the "interest in avoiding disclosure of personal matters." *Id.* at 599, 603-04 (recognizing that a statute requiring that the state be provided with a copy of certain drug prescriptions implicated the individual's interest in nondisclosure, but upholding the law because the statute contained adequate security measures); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 465 (1977) (assuming that President Nixon had a legitimate expectation of privacy in his private communications, but upholding a federal law that provided for the review and classification of presidential materials by professional archivists).

*Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008). Plaintiff's claim implicates the latter interest, i.e. the "individual's right to control the nature and extent of information released about that individual," which "has been coined an informational right to privacy." *Bloch v. Ribar*, 156 F.3d 673, 683 (6th Cir. 1998).

In *J.P. v. DeSanti*, 653 F.2d 1080 (6th Cir. 1981), the Sixth Circuit reviewed the Supreme Court's opinions regarding the right to privacy, including *Whalen*, *Nixon*, and *Paul*, and concluded that "the Constitution does not encompass a general right to nondisclosure of private information." *Id.* at 1087-90. The court declined to "recognize a general constitutional right to have disclosure of private information measured against the need for disclosure," reasoning that

47

"[t]he Framers . . . cannot have intended that the federal courts become involved in an inquiry nearly as broad balancing almost every act of government . . . against its intrusion on a concept so vague, undefinable, and all-encompassing as individual privacy." *Id*. at 1089-90. Consequently, the Sixth Circuit restricts the constitutional right to informational privacy to "those personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'" *Id*. at 1090 (citations omitted). "Only after a fundamental right is identified should the court proceed to the next step of the analysis – the balancing of the government's interest in disseminating the information against the individual's interest in keeping the information private." *Lambert*, 517 F.3d at 440.[2]

Applying these standards, the Sixth Circuit repeatedly has rejected claims asserting a constitutional right to nondisclosure of personal information. *See*, *e.g.*, *Lee v. City of Columbus*, 636 F.3d 245, 261 (6th Cir. 2011) (city's requirement that employees returning from sick leave disclose the nature of their illness to their immediate supervisors does not implicate a fundamental right); *Summe v. Kenton Cty. Clerk's Office*, 604 F.3d 257, 270-71 (6th Cir. 2010) (county's release of medical record of deputy county clerk to citizen pursuant to open records request did not implicate a right fundamental or implicit in the concept of ordered liberty so as to violate constitutional right to privacy); *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 591 (6th Cir. 2008) (school's disclosure of information to Children Services not a violation of plaintiff's constitutional rights); *Barber v. Overton*, 496 F.3d 449, 455-57 (6th Cir. 2007) (release of guards'

---

[2] In contrast to the Sixth Circuit, other circuits hold that the disclosure of some kinds of personal information requires the court to balance the government's interests in disclosure against the individual's interest in avoiding disclosure. *See*, *e.g.*, *Barry v. New York*, 712 F.2d 1554, 1559 (2d Cir. 1983); *Fraternal Order of Police v. Philadelphia*, 812 F.2d 105, 110 (3d Cir. 1987); *Woodland v. Houston*, 940 F.2d 134, 138 (5th Cir. 1991) (per curiam); *In re Crawford*, 194 F.3d 954, 959 (9th Cir. 1999). Although the Supreme Court has contrasted the holding in *DeSanti* with the approach taken in the foregoing opinions, the Court declined to clarify the scope of a constitutional right to informational privacy. *See NASA v. Nelson*, 562 U.S. 134, 146-47 & n.9 (2011) (assuming, without deciding, that such a right existed in that case).

birth dates and social security numbers did not rise to constitutional level); *Coleman v. Martin*, 63 F. App'x 791, 793 (6th Cir. 2003) (dissemination of prisoner's mental health records to parole board was not a constitutional violation); *Jarvis v. Wellman*, 52 F.3d 125, 126 (6th Cir. 1995) (disclosure of rape victim's medical records to an inmate did not violate her constitutional privacy rights); *DeSanti*, 653 F.2d at 1091 (constitutional rights not violated by dissemination of juvenile delinquents' social histories to various state agencies). Indeed, the Sixth Circuit has recognized an "informational-privacy interest of constitutional dimension" in only two instances: (1) where the release of personal information could lead to bodily harm, as in *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1061 (6th Cir. 1998) (dissemination of undercover officers personnel file to members of violent street gang some of whom officers testified against at trial); and (2) where the information released was of a "sexual, personal, and humiliating nature," as in *Bloch*, 156 F.3d at 684 (nonconsensual disclosure at press conference of details of plaintiff's rape).

In *Lee*, plaintiff challenged a city's policy requiring its employees to disclose the nature of their illness to their immediate supervisors after taking sick leave. *Id.* at 261. The court noted that it had "not yet confronted circumstances involving the disclosure of medical records that, in [its] view, are tantamount to the breach of a 'fundamental liberty interest' under the Constitution." *Id.* The court upheld the policy, reasoning that it did not "implicate the preservation of life and personal security interests recognized in *Kallstrom*, or the interest in shielding sexuality and choices about sex, protected in *Bloch*." *Id.*

The Sixth Circuit has determined that the disclosure of an inmate's HIV-positive status to prison guards did not violate the inmate's rights under the Fourteenth Amendment. *Doe v. Wigginton*, 21 F.3d 733, 740 (6th Cir. 1994) (holding that the plaintiff's claim "is foreclosed by the letter and reasoning" of *DeSanti* ). *But see Moore v. Prevo*, 379 F. App'x 425, 428

(6th Cir. 2010) (distinguishing *Wigginton* and holding that an inmate has a constitutionally-protected interest in avoiding disclosure of his HIV-positive status to other inmates, subject to legitimate penological interests).

Plaintiff alleges that disclosure of his medical condition – that he has hemorrhoids – both caused risk to his safety, as in *Kallstrom*, and implicated his interest in shielding sexuality and choices about sex, as in *Bloch*. His claim, however, falls short. First, revealing that Plaintiff has the common condition of hemorrhoids does not indicate Plaintiff's sexuality or choices about sex, except by taking an unreasonable and unsupported inference from the mere fact of the condition. Moreover, he alleges no facts in support of his claim that he was exposed to risk from other prisoners. Indeed, he claims only that it could lead other prisoners to harass him, not to attack him, as in *Kallstrom*. Additionally, his claim that he would be exposed even to harassment depends upon his unsupported inference from another unsupported inference about what having hemorrhoids means.

As a result, the logic of *DeSanti*, *Wigginton* and *Lee* forecloses Plaintiff's Fourteenth Amendment claim, because the disclosures alleged do not implicate a fundamental interest. The disclosure of an inmate's HIV status to prison guards, which the Sixth Circuit has held does not implicate a fundamental interest, *Wigginton*, 21 F.3d at 740, is of significantly more sensitivity than the disclosure to other prisoners and prison officials that Plaintiff has hemorrhoids. This Court has held that even disclosure of a prisoner's HIV status to prison inmates as well as prison officials does not implicate a fundamental interest under the *DeSanti* analysis. *See Holden v. Mich. Dep't of Corr.*, 2012 WL 2317538, at *5 (W.D. Mich. June 18, 2012) (holding that there exists no meaningful distinction between the disclosure in *Wigginton* to prison guards and the disclosure in *Holden* to guards and other prisoners); *Reeves v. Engelsgjerd,* 2005 WL 3534096, at

*4 (E.D. Mich. Dec. 23, 2005) (doctor did not violate prisoner's constitutional rights by discussing his medical condition with non-medical staff and in front of other inmates).

To the extent that *Moore* favors a different result, that decision is neither binding nor persuasive in light of other published Sixth Circuit authority both predating *Moore* (*Wigginton*), and post-dating *Moore* (*Lee*).  It is not binding because it is not a published decision. It is not persuasive because *Moore* does not employ the fundamental-interest analysis required by *DeSanti*, *Lambert*, *Bloch*, and *Lee*, nor does it cite any Sixth Circuit opinion in support of its holding.  Instead, it expressly adopts the reasoning of the Third Circuit in *Doe v. Delie*, 257 F.3d 309 (3d Cir. 2001).  *See Moore*, 379 F. App'x at 427 ("'It is beyond question that information about one's HIV-positive status is information of the most personal kind and that an individual has an interest in protecting against the dissemination of such information.'") (quoting *Delie*, 257 F.3d at 317). As the court in *Delie* recognized, however, the Sixth Circuit's decisions in *Wigginton* and *DeSanti* conflicted with its own. *Delie*, 257 F.3d at 319 n.7; *see Moore*, 379 F. App'x at 429 (Kethledge, J., dissenting).  Even if the Court accepts the finding in *Moore* and *Delie* that Plaintiff has an "interest" in protecting against disclosure to other inmates that he has hemorrhoids, it does not necessarily follow that such an interest is one of "constitutional dimension." *See Lambert*, 517 F.3d at 440.  In accordance with *DeSanti*, *Wigginton* and *Lee*, Plaintiff does not state a Fourteenth Amendment claim because the disclosure that he has hemorrhoids does not implicate a fundamental interest protected by the right to privacy under the Due Process Clause.

In sum, Plaintiff fails to state a procedural due process claim against Defendants Woods and Rykse for any inadequacies in their reviews of his misconduct charges or in the findings they make.  In addition, Plaintiff fails to state a substantive due process privacy claim against Defendants Scott, Rykse, and VanNortick based on their disclosures that Plaintiff has

hemorrhoids, whether those disclosures were made in misconduct forms viewable by other prison personnel or to a group of prisoners. Because Plaintiff makes no other allegations against Defendants Woods, Rykse, and VanNortrick that have not otherwise been dismissed, the Court will dismiss all three Defendants from the action.

G.    Kosher Meals

Plaintiff appears to allege that Defendant Cheney violated both the First Amendment and the RLUIPA by removing him from the Kosher meal program. However, the only fact that Plaintiff alleges about Defendant Cheney is that, on November 6, 2014, Plaintiff wrote to Cheney to ask to have his Kosher meals terminated.

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Although inmates retain First Amendment rights to the free exercise of religion, prison officials may impinge on these constitutional rights where their actions are "reasonably related to legitimate penological interests." *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a prison official's actions are reasonably related

to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

1. does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. are there alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

The RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to [a prison] . . . unless the government demonstrates that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a); *see also Haight v. Thompson*, 763 F.3d 554, 559-60 (6th Cir. 2014).

Here, Plaintiff utterly fails to allege that Defendant Cheney impinged on Plaintiff's religious rights in any fashion. Instead, according to Plaintiff's own allegations, he requested removal from the Kosher meal program. (Compl., ECF No. 1, PageID.31.) As a result, Plaintiff's allegations fail to demonstrate that Cheney in any way burdened Plaintiff's religious rights under the First Amendment or the RLUIPA. Any limitation on those rights was initiated by Plaintiff himself. Plaintiff therefore fails to state a claim against Defendant Cheney.

H.    Remaining Claims of Interference with Legal Mail

Plaintiff has made a number of allegations concerning various Defendants' actions to interfere with his legal mail.  As the Court previously discussed, most of Plaintiff's legal-mail claims previously were dismissed because they were barred by res judicata and/or they are conclusory.  Plaintiff's sole remaining legal-mail claim is that Defendant D. Christiansen interfered with his outgoing mail on July 14, 2014, and interfered with his incoming mail on August 4, 2014.  Upon initial review, the Court concludes that Plaintiff's First Amendment claim based on interference with his mail is sufficient to warrant service of the complaint on Defendant D. Christiansen.

I.    Supervisory Liability

Plaintiff's only remaining possible claim against Defendants Heyns, W. Smith, Norwood and Huss arises out of his suggestion that these Defendants failed to supervise their employees and/or failed to take action on one or more of Plaintiff's grievances and complaints.  In addition, Plaintiff alleges that Defendant D. Christiansen refused to take action on Plaintiff's grievance and verbal complaint about the denials of his access to legal materials and copying. (Compl, ECF No. 1, PageID.25.)  Plaintiff also alleges that Defendant Scott failed to take action on Plaintiff's complaints about being shorted some food item at three different meals.  He further contends that Defendants Daugherty and Aramark failed to adequately supervise their subordinates in the preparation and delivery of meals.  He also suggests that Defendants Daugherty and Aramark are liable for the termination of Plaintiff's Kosher meals because they notified Plaintiff in a grievance response that his Kosher meal program had been terminated by Defendant Cheney.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at

676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance or complaint. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff has failed to allege that Defendants Heyns, W. Smith, Norwood, and Huss engaged in active unconstitutional behavior when they failed to supervise their employees or kept and promoted employees that, Plaintiff subjectively believes, violated his and other prisoners' rights on one or more occasions. The Court therefore will dismiss Defendants Heyns, W. Smith, Norwood, and Huss. For the same reasons, the Court will dismiss Plaintiff's claim against Defendant D. Christiansen based on D. Christiansen's alleged failure to take action on Plaintiff's complaints that other Defendants had denied him access to legal materials and copying. Also for the same reasons, the Court will dismiss Plaintiff's claim against Defendant Scott based on his failure to take action on Plaintiff's complaint about being shorted some food items on three occasions. Finally, Plaintiff fails to allege any active conduct by Defendants Aramark and Daugherty, contending only that they were negligent in supervising their subordinates and in

responding to Plaintiff's grievances. Because Plaintiff makes no allegations of active conduct against Defendants Aramark and Daugherty, the Court will dismiss them from the action.

J.      Lack of Allegations – Defendant J. Christiansen

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991).

Plaintiff fails to even to mention Defendant J. Christiansen in the body of his complaint, except to allege that J. Christiansen may be related to Defendant D. Christiansen and, arguably, that (unknown) Christiansen was improperly promoted and retained as a prison

employee. The Court has dismissed the claim against any Defendant respecting the improper promotions, and the fact that J. Christiansen may be related to D. Christiansen is irrelevant to any claim made by Plaintiff. Plaintiff's allegations against J. Christiansen therefore fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

### IV. Future Filings

Plaintiff is a frequent litigator in this Court and in the Eastern District of Michigan. In several of his actions, Plaintiff has operated much as he has in this action – by filing a complaint naming numerous Defendants, most of whom are unrelated and including Defendant Heyns or his predecessor, Patricia Caruso, as responsible parties for the conduct of other individuals. *See, e.g., Annabel v. Mich. Dep't of Corr. et al.*, No. 1:14-cv-756 (W.D. Mich.); *Annabel v. Heyns et al.*, No. 2:14-cv-11337 (E.D. Mich.); *Annabel v. Heyns et al.*, No. 2:12-cv-13590 (E.D. Mich. Aug. 7, 2013) (R&R, ECF No. 34, PageID.586); *Annabel v. Caruso et al.*, No. 1:09-cv-176 (W.D. Mich.). After having a complaint against Defendant Heyns first dismissed because his allegations were based on supervisory liability, *see Annabel v. Heyns et al.*, No. 14-11337 (E.D. Mich. July 31, 2015) (R&R adopted on September 21, 2015), Plaintiff began to add allegations, as he did in this case, that all Defendants are linked by a conspiracy "orchestrated by Defendant Heyns, to deprive petitioner of his constitutional rights in retaliation for a prior lawsuit filed against Heyns and other prison officials and in retaliation for various grievances." *Annabel v. Heyns et al.*, No. 2:12-cv-13590 (E.D. Mich. Aug. 7, 2013) (R&R, ECF No. 34, PageID.586); *see also Annabel v. Mich. Dep't of Corr. et al.*, No. 1:14-cv-756 (W.D. Mich. Aug. 21, 2014) (Op., ECF No. 17, PageID.170-171). Those allegations routinely have been held not to state a claim. *Id.*

The instant 42-page complaint constitutes an abusive amalgam of improperly joined claims in a single action, including claims that were raised and rejected in earlier complaints. When viewed against Plaintiff's litigation history, the filing of the instant complaint borders on conduct that would warrant the imposition of restrictions on future filings. *See Shepard v. Marbley*, 23 F. App'x 491, 493 (6th Cir. 2001) (discussing the court's inherent authority "to impose pre-filing restrictions on an individual with a history of repetitive or vexatious litigation") (citing *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998), and *Ortman v. Thomas*, 99 F.3d 807, 811 (6th Cir. 1996)). While the Court will not impose such restrictions at this time, Plaintiff is hereby notified that any future attempt to file a blunderbuss complaint like the one filed in this case will be met with an order restricting Plaintiff from filing any complaint longer than ten pages and any complaint arising out of more than one transaction or occurrence.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines and/or reiterates that Defendants Michigan Department of Corrections, Aramark Corporation, Woods, Rykse, VanNortrick, Cheney, Novak, Davis, Sleight, Heyns, W. Smith, Norwood, Huss, Daugherty, E. Smith, and J. Christiansen will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court also dismisses the following claims against all Defendants: claims of conspiracy; claims under the ADA and RA; RICO claims; claims concerning Plaintiff's transfer to ICF; claims concerning interference with Plaintiff's grievances, claims concerning interference with Plaintiff's legal property; claims concerning interference with Plaintiff's legal mail (except by Defendant D. Christiansen on July 14, 2014); claims concerning the mocking of his religion; claims about deprivations of food (except deprivations while being hog-tied), contamination of food, and

placement on foodloaf; and claims about verbal abuse. The Court will serve the remainder of the complaint (Plaintiff's Eighth Amendment and retaliation claims) against Defendants Grandy, Eyer, Burns, Zwiker, Bennett, Scott, Berrington, King, Kronk, Yee, and Apol and the legal mail claim against Defendant D. Christiansen.

An Order consistent with this Opinion will be entered.


Dated:   July 18, 2018                        /s/ Paul L. Maloney
                                              Paul L. Maloney
                                              United States District Judge